UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: )<br>)<br>MCCOOK METALS, L.L.C. and )<br>MCCOOK EQUIPMENT, L.L.C., )<br>)<br>Debtors. )<br>_____ )<br>)<br>JOSPEH BALDI, as Chapter 7 trustee of )<br>McCook Metals, L.L.C., )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>FEDERAL INSURANCE COMPANY, )<br>)<br>Appellee. ) | Case No. 07 C 0621<br><br>Honorable John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of the Bankruptcy Court's December 14, 2006 Order. For the reasons that follow, the December 14, 2006 Order of the Bankruptcy Court is reversed.

McCook Metals, L.L.C. filed a voluntary petition for relief pursuant to the provisions of Chapter 11 of Title 11, United States Bankruptcy Code; and Baldi was appointed trustee. Subsequently, Baldi filed an Adversary Complaint (the "D&O Litigation") in the Bankruptcy Court against Michael Lynch (a managing member, officer, director and Chairman of McCook and Longview Aluminum, LLC ("Longview")), certain other McCook officers and directors (the "Fiduciaries"), and Longview.

Count I of the Adversary Complaint sought avoidance of a fraudulent transfer; Count II alleged a violation of the Uniform Fraudulent Transfer Act; Count III sought recovery of the value of the property whose transfers were avoided in Counts I and/or II; Count IV alleged conversion; and Count V alleged breach of fiduciary duties.

The Adversary Complaint contained "Common Allegations" to all counts, in paragraphs 1 through 28, summarized as follows. The Fiduciaries filed a lawsuit against Alcoa, Inc., in opposition to Alcoa's intended acquisition of Reynolds Metals Company – McCook's supplier of high-grade aluminum. McCook incurred approximately $7,826,959 in total fees and expenses in opposition to the acquisition. Subsequently, the Fiduciaries formed Longview for the purpose of acquiring a Reynolds reduction plant in Longview, Washington. Contrary to their fiduciary duties to McCook, the Fiduciaries caused: (1) McCook to settle the McCook lawsuit against Alcoa with no benefit to McCook, (2) Longview to purchase the Longview Reduction Plant with no benefit to McCook, (3) Longview to enter into an agreement with the power company providing power to the reduction plant in which Longview received $226,000,000, (4) McCook to assign Reynolds' obligation to supply high-grade aluminum to Longview without benefit to McCook and to McCook's detriment, and (5) the Longview Reduction Plant to cease manufacturing high-grade aluminum for McCook. The conversion claim, in Paragraph 36, alleged that "the Fiduciaries and Longview have intentionally, wrongfully and without proper authorization assumed control, dominion and ownership of McCook's property . . . ."

The breach of fiduciary claim specifically alleged as follows:

## COUNT V
## BREACH OF FIDUCIARY DUTIES

1-38. The Trustee restates paragraphs 1 through 38 of Count IV as paragraphs 1 through 38 of Count V[1].

39. By virtue of their positions as members, officers and directors of McCook, each of the Fiduciaries owed McCook fiduciary duties of loyalty, care, good faith and fair dealing.

40. By engaging in the conduct described above, each of the Fiduciaries breached their fiduciary duties to McCook.

41. As a direct, proximate and foreseeable result of the Fiduciaries' breaches of their fiduciary duties to McCook, McCook suffered substantial damages.

**Wherefore**, the Trustee respectfully requests that this Court enter judgment in his favor and against the Fiduciaries for compensatory and punitive damages in an amount to be determined at trial, and that the Court award the Trustee interest, his attorneys fees, and such further relief as may be just and appropriate.

Baldi provided timely notice and a copy of the Adversary Complaint to Federal Insurance Company ("Federal"), McCook's directors' and officers' liability insurance carrier. The Federal policy provided up to $15,000,000 in indemnification for wrongful acts by McCook's directors and officers while acting in their official capacities. Paragraph 13(h) of the policy, generally known as a "personal profit exclusion, excluded claims "based upon, arising from, or in consequence of such Insured Person having gained in fact any profit, remuneration or advantage to which such Insured Person was not legally entitled."

---

[1] Count V, therefore, not only pled the "common allegations" of paragraphs 1 through 28 but also the material elements of the claims set out in Counts I through IV, charging fraudulent transfer and conversion.

3

Federal acknowledged receipt of the Adversary Complaint but denied coverage based on the "insured v. insured" exclusion of the policy, which excludes coverage for claims "brought or maintained by or on behalf of any insured . . . ." Federal did not provide any type of defense coverage for Lynch, Longview, or the Fiduciaries in the D&O Litigation. Federal did not file a declaratory judgment action to determine whether it was obligated to defend and/or indemnify Lynch, Longview, or the Fiduciaries in the D&O Litigation.

Following a trial on the merits of the Adversary Complaint, the Bankruptcy Court entered judgment in the D&O Litigation in favor of Baldi and against Lynch. The D&O judgment is comprised of two separate, alternative awards: (1) an award of $2,744,000 as to the fraudulent transfer claims and, alternatively, (2) an award of $1,637,993 as to the breach of fiduciary duty claims. Federal again denied coverage and refused to pay the award.

Baldi filed another Adversary Complaint in the Bankruptcy Court to determine his rights under the policy and to recover the amounts he was entitled to thereunder. Federal moved to have the Adversary Complaint dismissed[2], which was granted by the Bankruptcy Court on the sole basis that the D&O Complaint did not allege facts potentially within coverage of the policy because of the "personal profit exclusion" contained in the policy, which, as cited by the Bankruptcy Judge, provides as follows: "That exclusion excepts from coverage any loss arising from a claim against

---

[2]In its motion, Federal argued that dismissal was appropriate because: (1) Lynch received an "ill-gotten" gain, and the policy did not insure the return of ill-gotten gains because such gains did not constitute a "Loss" under the policy; (2) Illinois public policy prohibited insuring ill-gotten gains; and (3) Federal was not estopped from denying coverage. The Bankruptcy Court entered an order, finding that Federal's motion "may be affected by an issue not raised by the parties, namely whether Federal Insurance Company was relieved of any duty to defend its insured in the adversary proceeding *Baldi v. Lynch, et al.*, 02 A 00790, by the 'personal profit' exclusion in ¶ 13(h) of the policy at issue." Thereafter, both parties submitted supplemental memoranda.

an officer or director 'based upon, arising from, or in consequence of such insured person having gained in fact any personal profit, remuneration or advantage to which such insured person was not legally entitled.'" In its oral ruling, the Bankruptcy Court found that the underlying complaint alleged that Lynch and the other directors and officers caused McCook to release property for their personal benefit or caused McCook to fraudulently transfer property to Longview, which was owned by the directors and officers, and, therefore, personally benefitted from the transfer; and, although the underlying complaint also alleged fraud, conversion, and breach of fiduciary duty, "all of the alleged activity gave a personal profit" to the directors and operators. The Bankruptcy Court concluded, "The complaint simply does not allege facts that could potentially fall outside the personal profit exclusion and inside the policy's coverage; therefore, Federal was within its right to refuse to defend and indemnify."

Baldi appeals this order of dismissal of the Adversary Complaint on December 14, 2006, to this Court and argues that the Bankruptcy Court erred in dismissing Baldi's complaint based on its finding that Federal did have a duty to defend based on the "personal profit" exclusion of the insurance policy.

A bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Heartland Steel, Inc.*, 389 F.3d 741, 743-44 (7th Cir. 2004). The court reviews the bankruptcy court's factual findings for clear error. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003). The parties agree that the insurance policy is governed by Illinois law.

In determining whether an insurer has a duty to defend, the court looks to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. *See Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill. 2d 90, 107-08 (1992)

(*Outboard Marine*). The insurer's duty to defend arises if "the facts alleged in the underlying complaint fall within, or potentially within" the insurance policy's coverage. *Outboard Marine*, 154 Ill. 2d at 108.

The allegations in the underlying complaint are liberally construed in favor of the insured, with all doubts resolved in the insured's favor, in determining whether the allegations fall within, or potentially within, the insurance policy's coverage. *See Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 153 (1999) (*Ehlco*); *Outboard Marine*, 154 Ill. 2d a125.

This "duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, *one of which is within the coverage of the policy while others may not be.*" *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194 (1976) (*Peppers*) (emphasis added). "Especially since the advent of notice pleading, in a case where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, the insurer must defend; and its defense obligations will continue until such time as the claim against the insured is confined to a recovery that the policy does not cover." *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir. 1980) (*Solo Cup*).

The introductory paragraph of the Adversary Complaint specifically alleges that Baldi seeks to "recover the value of millions of dollars of McCook property, including valuable contract rights, claims and corporate opportunities, that McCook's officers and directors caused McCook to release for no consideration but rather than their own personal benefit, or caused McCook to fraudulently transfer directly to their corporate puppet." Paragraph 24 of the Adversary Complaint also alleges that the "Fiduciaries also recognized that their control of McCook gave them the opportunity to capitalize on McCook's objections and opposition to Alcoa's acquisition of Reynolds to their own

personal advantage." Baldi relies on the breach of fiduciary claim as a potential claim that falls within the policy. However, the breach of fiduciary claim as pled not only incorporates all of the previous allegations, including the introductory paragraph and Paragraph 24, but also the claims of fraudulent transfer and conversion.

Baldi argues that the breach of fiduciary claim was potentially covered under the policy because the alleged breach of fiduciary duty in Count V was not necessarily based on Lynch's receiving an illegal profit, as alleged in the fraudulent transfer and conversion claims, but on the material allegations that Lynch breached his fiduciary duty to McCook by failing to allow McCook to: (1) acquire the Longview Reduction Plant, (2) secure a continued source of high-grade aluminum at favorable pricing, (3) enjoy the benefits of McCook's expenditure of legal fees to oppose the Alcoa acquisition, and (4) enjoy the economic benefits related to the Bonneville Power Administration's ("BPA") obligations under the BPA agreement.

Federal counters that the Bankruptcy Court's ruling was correct in that all of the allegations in the Adversary Complaint, including those incorporated by reference into Count V claiming a breach of fiduciary duties, stem from the alleged "personal benefit" and "personal gain" to the directors and operators.

The issue here, then, is whether coverage is excluded because the Adversary Complaint incorporated allegations of personal profit to the officers and directors into Count V, the breach of fiduciary duties claim, where such allegations are not necessary to maintain that cause of action. Clearly, Baldi could have pled a breach of fiduciary claim regardless if Lynch received a personal benefit. To plead a breach of fiduciary duty claim, Baldi would need to allege: (1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, and (3) that such breach proximately caused the

7

alleged injury. *See Neade v. Portes*, 193 Ill. 2d 433, 444 (2000). "The proper inquiry, therefore, must focus not only on the factual allegations, but on the elements of the causes of action that are alleged. If an element of the cause of action that must be proved requires that the insured gained a profit or advantage to which he was not legally entitled, then, if proved, this exclusion would be applicable. That is not the case here." *Alstrin v. St. Paul Ins. Co.*, 179 F. Supp. 2d 376, 400 (D. Del. 2002) (*Alstrin*). In *Alstrin*, the court held the breach of fiduciary duty claim did not fall within the personal profit exclusion.[3] The *Alstrin* analysis is persuasive; based on the facts alleged in the Adversary Complaint, Baldi pled a claim for breach of fiduciary duty that did not require an allegation (or proof) that Lynch personally profited from illegal conduct. *See Solo Cup*, 619 F.2d at 1186-87 (analyzing whether plaintiff's claim of discrimination based on disparate impact theory potentially fell within the insurance policy via the elements required to prove that claim and plaintiff's allegations); *see also Alstrin*, 179 F. Supp. 2d at 399-400 (introductory allegation that the director "looted the Company of its valuable assets and [] managed and operated the Company principally for their own benefit" insufficient to trigger personal profit exclusion).

Baldi's Adversary Complaint, in its entirety, clearly alleges claims based on Lynch's receiving personal profit for illegal conduct. Liberally construing the Adversary Complaint in Baldi's favor, with all doubts resolved in Baldi's favor, the allegations of the breach of fiduciary claim potentially fall within the insurance policy's coverage and outside the personal profit exception.

---

[3] The personal profit exclusion in *Alstrin* excluded claims "arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an insured was not legally entitled." *Alstrin*, 179 F. Supp. 2d at 398. The exclusion provision here excluded claims "based upon, arising from, or in consequence of such Insured Person having gained in fact any personal profit, remuneration or advantage to which such Insured Person was not legally entitled."

Moreover, when construing an insurance policy, the court must ascertain the parties' intent. *See Outboard Marine*, 154 Ill. 2d at 108. The insurance policy is construed as a whole in determining the parties' intent. If the terms of the policy are unambiguous, they are afforded their plain, ordinary, and popular meaning. *See Outboard Marine*, 154 Ill. 2d at 108.

Here, Section 13(h) of the policy exempted a director and officer "*claim* . . . based upon, arising from, or in consequence of such Insured Person having gained in fact any personal profit, remuneration or advantage to which such Insured Person was not legally entitled." The parties' intent was to exclude "*claims* . . . based upon, arising from, or in consequence of" directors and officers' personal profit. (Emphasis added). While *claims* in other counts of the Adversary Complaint are based on the gain of personal profit by the director or officer and are exempt from coverage, the breach of fiduciary duties *claim*, as pled, does not and potentially falls within the insurance policy's coverage. To import unnecessary allegations of personal gain to an officer or director not material to a claim for breach of fiduciary duty because the manner in which the claims were pled would, in this case, frustrate the intent of the parties to the contract of insurance.

Based on the above, the Bankruptcy Court erred in finding that Federal did not own a duty to defend based on the personal profit exclusion. *See Outboard Marine*, 154 Ill. 2d at 108; *Peppers*, 64 Ill. 2d at 194.

Federal argues that even if the court finds that the personal profit exclusion does not apply, the Federal policy does not provide coverage based on other grounds. However, the only basis for this appeal was the dismissal of the Adversary Complaint based on the personal profit exception. Thus, Federal's additional arguments are not now properly before this Court.

Baldi also appeals the Bankruptcy Court's finding that Federal was not estopped from denying coverage. In light of the Court's above ruling, the Bankruptcy Court's ruling on this issue must also be revisited on remand.

Based on the foregoing, the December 14, 2006 Order of the Bankruptcy Court, dismissing the Trustee's Adversary Complaint to determine rights under the insurance policy, is reversed. The matter is remanded to the Bankruptcy Court for further proceedings consistent with this ruling.

Dated: June 7, 2007

JOHN W. DARRAH
United States District Court Judge